## Ellis County v. T. F. Thompson.

### No. 1033.   Decided November 4, 1901.

**1.—Jurisdiction—Amount—Fraud.**

The fact that less than the amount necessary to give the court jurisdiction was, upon the construction of a difficult statute, held to be legally recoverable, does not tend to prove fraudulent claim of a larger amount by plaintiff in order to give the court jurisdiction.   (P. 26.)

**2.—Fees of Office—Construction of Statute.**

A county clerk in a county where more than 7500 votes were cast was entitled to retain out of fees of office collected, in addition to his maximum salary of $2500 and the amount paid to his deputies, one-fourth of the excess of such fees over the pay of himself and deputies,—not one-fourth of the excess over his own salary.   Act, June 16 and 19, 1897, secs. 10, 11, 12—Batts' Dig., arts. 2495c, 2495d, 2495e—construed.   (Pp. 26-34.)

**3.—Fees of Office—Collection—Commissions.**

The "officer to whose office the fees accrued," authorized by the statute (Batts' Rev. Stats., art. 2495d) to collect same, is the incumbent at the time of their collection, not the ex-officer during whose term of office the fees accrued; and the latter is not entitled to the commission allowed by law, for collecting them after going out of office.   (P. 29.)

**4.—Same.**

The "fees of all kinds" (Batts' Rev. Stats., art. 2495c), out of which only a maximum amount is to be retained by the officer, embrace everything not specially excepted by the statute; compensation for ex-officio services allowed by the commissioners court and fees in suits to collect taxes are so excepted,—but not commissions on fees collected.   (P. 29.)

**5.—Statutory Construction.**

Effect of the general intention on the face of an act to restrict rather than enlarge the rights of officers, upon the construction of the language of a particular part, considered; also the effect of one section on the construction of the language of another.   (Pp. 31-33.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Ellis County.

Ellis County sued Thompson and appealed from a judgment for defendant, on affirmance of which the county obtained writ of error.

*Jack Beall* and *T. B. Williams,* for plaintiff in error.—Section 10 of the act says, that in a certain class of counties the county clerk shall receive $2500 as a maximum salary and "in addition thereto one-fourth of the excess of the fees" collected by him.   "Excess" over what?   The statute itself does not say.   The statute elsewhere provides for the hire of deputies and their pay.   It further provides that the clerk shall pay to the county treasurer all fees collected by him in excess of the maximum salary allowed and one-fourth of the excess of the maximum amount allowed for their services and for the services of their deputies, or assistants hereinafter provided for.

We submit that from the language used the interpretation contended for by appellant is the proper one.   But if this be denied, then how should the interpretation be reached?   Evidently by regarding the rules

laid down in the books, viz., look to the old law, the evil and the remedy for the purpose of arriving at the intent of the legislature, and give to it that interpretation which will effect that purpose rather than which would defeat it.

We invoke the pardon of the court in saying that the writer of this, while the original Wayland fee bill was before the committee, first put upon it an amendment giving to the officer an interest in the "excess" of fees collected. It will be readily seen that this served a double purpose. It added to the salary of the officer, it is true, but it also was a guaranty to the county that the officer would be vigilant in the exercise of his duty as an officer and in charging and collecting fees. Without some such provision after the receipts of office amounted to a sufficient sum to pay the maximum salary and the expenses of the office there would be danger that the officer would become negligent in the performance of his duties to the public or indifferent to the necessity of diligently charging and collecting the fees of his office, and we venture the suggestion that the latter consideration was the one responsible for the presence of this provision in the law rather than a desire to add to the fees of the officers, and we also opine that the construction given by the Court of Appeals was never remotely hinted at by anyone during the consideration of this measure by the Legislature.

The construction given to this law by the Court of Civil Appeals involves a contradiction. It says that the appellee herein is entitled to $1072.32 in addition to his maximum salary of $2500, because the first amount is one-fourth of the "excess." It further says the county is entitled to nothing because there is a deficit, by calculation amounting to $641.06. These are contradictory terms, and can not well exist together. There can not be both an "excess" and a "deficit."

*Templeton & Harding* and *Finley, Etheridge & Knight,* for defendant in error. (From argument on motion for rehearing).—This court in its opinion has subordinated the plain language of section 10 to language contained in section 11. The language used in section 11 is by the court treated as an interpretation of language used in section 10. Inasmuch as the language used in section 10 is plain, and needs no interpretation so far as its own terms be concerned, it is suggested that nothing short of an absolute inconsistency between the two provisions and a clear intention that the provision of section 11 should limit and control the effect to be given the language in section 10, would justify the court in forcing the expression of section 10 to yield to section 11. It is a canon of construction that there exists a presumption against inconsistency. Black on Interp. of Laws, p. 98, sec. 44.

It should be remembered that section 11 of the act is subsidiary in character; it deals with neither of the objects embraced in the title of the act, but relates to the matter of excess in fees, and the duty of officers in relation thereto. The particular clause in question, and to which the court has given controlling effect, simply gives direction as to the

payment of the excess into the county treasury, and manifestly in so far as it touches the question of the amount of compensation allowed to officers, does · so only by incidentally reiterating the compensation allowed under section 10, by way of pointing to the excess to be paid into the treasury.

The clause is clumsy and more or less involved, but it is patent that the effort was to state that the pay allowed officers and the pay allowed deputies was to be taken out of the whole sum of fees collected and the excess of such fees turned into the county treasury. The whole question of doubt arises out of the attempt to restate the amount allowed officers so as to get at, by a process of elimination, the excess to be paid into the county treasury. The court seems to attach much importance to the fact that the term "maximum amount," as used in this section, refers to the stated amount of $2500. In our judgment, this fact does not lead necessarily, nor even fairly, to the construction which the court has given the statute. Treating the clause as directing the officer to pay into the county treasury an excess of the fees collected, and as pointing out the method of determining the excess by reason of the fact that the element of deputies' pay has just been introduced, we have no difficulty in reaching the conclusion that the sentence means, that the excess which is to be paid into the county treasury was the sum remaining after taking from the total sum of all the fees collected the several items in the order named in said section, viz: 1. The $2500. 2. The one-fourth of the remaining sum. 3. The sum of the deputies' salaries; the balance to constitute the excess to be paid into the county treasury.

We think the construction given to this particular clause by the court may have been in some degree led to by the fact that the court treats this part of section 11 as directing the officers to retain a certain portion of the fees collected, while the fact is, that it is a direction to pay into the county treasury a certain sum as an excess which is to be arrived at by a process of reduction and elimination.

To make our contention clear and simple, we think the clause intended to mention three sums by which the total sum of fees collected is to be reduced before the excess is determined which is required to be paid into the county treasury. Naturally the Legislature would place these sums in the order in which they are provided for in the act. Already in section 10 it has been provided that the clerks should receive a stated sum of $2500, and the further sum of one-fourth of the excess of the fees collected over this $2500. In the eleventh section, for the first time, the further element of deputies' fees to be provided for in the next section, is introduced and is necessary to be noticed, and it is mentioned as the third element to reduce the total sum of the fees collected before the excess could be created to which the county would be entitled. While the language is not clear, it seems to us that this construction of it accords with the expression of the section itself, and places this section in entire harmony with section 10, under its literal construction.

It is a canon of construction that where one portion of a section of a statute is clear and definite, and another doubtful and susceptible of more than one construction, the latter must yield and be made to conform to the former.   Suth. on Stat. Const., p. 313, sec. 237.

From still another view we think it can be clearly demonstrated that this court's construction should not obtain.   Section 10 of the act allows designated officers in certain counties "an amount not exceeding $2500 per annum; and in addition thereto one-fourth of the excess of the fees collected by the officers respectively."   Section 11 (first sentence) provides that "the amounts allowed to each officer mentioned in section 10 of this act may be retained out of the said sums of money," but out of all the fees collected by him there might be an excess over the amounts allowed the officer and the amounts allowed for their deputies, and it is natural that the law should provide for the disposition to be made of such excess.

In section 11 that excess is attempted to be defined and the officers directed to pay such excess "to the county treasurer of the county where the excess occurs."   We now invite the court's attention to the clause of section 11, the proper construction of which is in dispute, and ask that such clause be considered in the light of other sections of the act heretofore quoted.   The clause reads:   "And all fees collected by the officers named in section 10 of this act during the fiscal year, in excess of the maximum amount allowed and one-fourth of the excess of the maximum allowed for their services, and for the services of their deputies and assistants hereinafter provided for, shall be paid to the county treasurer of the county where the excess occurs."   Under any construction given this clause the words "the amount allowed," or their equivalent, is to be understood before the phrase "for the services of their deputies or assistants hereinafter provided for."

BROWN, ASSOCIATE JUSTICE.—From the opinion of the Court of Civil Appeals we copy the following findings of fact:

"T. F. Thompson was county clerk of Ellis County from December 1, 1897, to November 23, 1898.   Ellis County cast as many as 7500 votes at the presidential election held in 1896.   Thompson collected in cash from all sources as fees earned by said office during the time he was clerk $6886.70, less a credit of $136.10 for error and stamps allowed, leaving $6750.60.   He also collected commission on fines, $190.55. There were delinquent fees at the time he went out of office, $1294.61, of which he has since collected $239.55, and there is in the hands of the present clerk $167.50 not yet paid over to Thompson.   Thompson paid out for assistants and deputies appointed as required by law, $4151.59."

In accordance with the requirements of the statute, Thompson made a report to the District Court of Ellis County of fees collected by him during the year from the 1st day of December, 1897, to the 23d day of November, 1898, at which time his term of office expired.   By this report, he showed that nothing remained in his hands of the fees col-

lected, after deducting those sums which, according to his construction of the statute, he was authorized to retain. Ellis County instituted this. suit in the District Court of that county against Thompson to recover· of him the sum of $1030.11, claimed to have been collected by him as. fees during the year aforesaid and which was in excess of all the dif-- ferent amounts to which he was entitled under the law. The trial court gave judgment that Ellis County take nothing by its suit and for all costs, which judgment was affirmed by the Court of Civil Appeals.

Defendant in error filed in this court a motion and plea by which he· seeks to have this writ of error dismissed because he alleges that the sum sued for by the plaintiff in error was alleged in its petition in the: District Court at a sum greater than $1000, fraudulently and for the purpose of giving to the Supreme Court jurisdiction of the case upon. writ of error. The attorney for Ellis County who prepared and filed the petition in the District Court and has prosecuted the case since, filed in this court an answer to the motion and plea in which the allegations. of fraud are specifically denied. The affidavits presented by the defend- ant in error to sustain his motion do not evidence any intent on the· part of Ellis County or its counsel to fraudulently give jurisdiction to this court of the suit then instituted. They simply establish a state of facts from which the counsel for Ellis County, if he had considered them in the light they are presented here, might have determined that. his client was not entitled to recover as much as the sum he sued for;. but these facts do not tend to establish the proposition that there was. a fraudulent intent in putting the sum over $1000. The plea and motion are therefore overruled.

The contention in this case arises over the construction of the follow-. ing language employed in the act of the Legislature approved June 16, 1897, known as the fee bill, as amended by an act approved June 19,. 1897:

"Sec. 10. That hereafter the maximum amount of fees of all kinds. that may be retained by any officer mentioned in this section as com- pensation for services shall be as follows: * * * In counties in. which there were cast at the last presidential election as many as 7500 votes, * * * clerk of the county court, an amount not exceeding $2500 per annum; * * * in addition thereto, one-fourth of the· excess of the fees collected by [him] the officers respectively." Batts' Digest, art. 2495c.

"Sec. 11. The amounts allowed to each officer mentioned in section 10 of this act may be retained out of the fees collected by him under- existing laws, but in no case shall the State or the county be responsible· for the payment of any sum when the fees collected by any officer are less than the maximum compensation allowed by this act, or be responsi- ble for the pay of any deputy or assistant. Each officer mentioned in. the preceding section, and also the sheriff, shall, at the close of each fiscal year, make to the district court of the county in which he resides. a sworn statement, showing the amount of fees collected by him during

the fiscal year and the amount of fees charged and not collected, and by whom due, and the number of deputies and assistants employed by him during the year, and the amount paid or to be paid each; and all fees collected by officers named in section 10 of this act during the fiscal year in excess of the maximum amount allowed, and of the one-fourth of the excess of the maximum allowed for their services, and for the services of their deputies or assistants hereinafter provided for, shall be paid to the county treasurer of the county where the excess accrued." Section 12 provides that when any officer desires deputies or assistants in the performance of his duties, he shall make application to the county judge for authority to make such appointments, stating the number required and showing the necessity for their appointment. When the county judge has given the authority, the officers may appoint them with salaries not to exceed, to the first assistant, $1200 per annum, and to all others, not to exceed $900 per annum; and it is provided that "the amount to be paid each and the compensation allowed shall be paid out of the fees of office to which said deputies or assistants may be appointed, and shall not be included in estimating the maximum salaries of officers named in section 10 of this act."

The defendant in error contends that under this statute he was entitled to retain in his possession one-fourth of all the fees collected by him in excess of $2500, and this view of the law was adopted by the trial court and the Court of Civil Appeals; that is, from the whole sum collected $2500 was deducted, and then the one-fourth of the remaining sum was deducted as the compensation of the clerk. The plaintiff in error insists that the $2500 maximum salary provided for the clerk by law and the $4151.59 paid for the service of deputies, should have been first deducted and the excess of fees collected should have been divided, one-fourth to the defendant in error and three-fourths to Ellis County.

The law made it the duty of Thompson, as county clerk of Ellis County, at the end of the financial year, to make a report showing the total amount of fees collected by him and the sum paid to his deputies, which would furnish all the data necessary for a settlement with the county. Article 2495d prescribes the rule by which the contention in this case may be decided, and its proper application to the facts can be best illustrated by stating the account between Thompson and Ellis County as the statute directs. Thompson should be charged with the fees collected during the year, $7348.24, and should be credited with $2500, the "maximum amount allowed for his services," and with the amount paid to deputies, $4151.59, aggregating $6651.59; which, being deducted from the whole amount of costs collected, leaves $696.65, the excess "of the maximum amount allowed for his services and for the services of his deputies." He is entitled to credit for $174.16, the one-fourth of the last named amount, which makes $6825.75, the total credits. The difference between the credits and the sum collected, $522.49, is the excess of the collection over all law-

ful credits and should have been paid into the county treasury. This solution fulfills every requirement of the law and is in harmony with the scheme inaugurated by the statute.

The defendant in error claims that the language "the maximum amount of fees of all kinds that may be retained by any officer mentioned in this article as compensation for services shall be as follows," includes the $2500 and the "one-fourth of the excess of fees collected by said officers;" and that the phrase "maximum amount allowed for his services," when used in the statute, means the specified sum and the one-fourth of the excess of the fees collected. It is contended that this construction is supported by article 2495e (Batts' Digest), which provides that the fees paid deputies "shall not be included in estimating the maximum salaries of officers named in section 10 of this act," but we think that the Legislature intended to express that the pay of deputies should not be deducted from the specified maximum salary. All doubt as to the proper construction of the language used in article 2495c is certainly removed by article 2495d, which authorized Thompson to retain out of the fees collected by him the amounts allowed by the preceding section, which is defined by the language "in excess of the maximum amount allowed and of the one-fourth of the excess of the maximum amount allowed for their services and for the services of their deputies." This clearly expresses two "excess" amounts to be ascertained; first, that sum which is in "excess" of the maximum amount allowed, and second, the "excess" over and above the maximum allowed to the officer and the sum paid to his deputies. The maximum amount allowed the clerk $2500 and $4151.59 paid to the deputies must be deducted to arrive at the "excess" of fees collected, of which Thompson was entitled to retain one-fourth. The "one-fourth of the excess" could not be a part of "the maximum amount allowed," and at the same time be part of the remainder after deducting the maximum and another sum. This language defines the term "maximum" to mean the specified sum, $2500, and the phrase "the excess of the fees collected by the said officers" signifies that sum which remains after taking from the whole the maximum and the amount paid to the deputies.

The District Court and the Court of Civil Appeals erred in their construction of the statute and the judgment entered against Ellis County and the said judgments are hereby reversed and judgment is entered against the defendant in error, T. F. Thompson, in favor of Ellis County for the sum of $522.49, with 6 per cent interest thereon from the 23d day of November, 1898, together with all costs accruing in all of the courts.

## ON MOTION FOR REHEARING.

BROWN, ASSOCIATE JUSTICE.—The earnestness which characterizes the presentation of this motion calls for notice by this court of

the most important objections against the construction we have given to the statute in question.

By inadvertence, the sum of $167.50, collected by the successor of Thompson of the delinquent fees reported by the defendant, was charged against him in our statement of the account. This will be corrected.

Thompson collected $239.55 after he went out of office and claims that he is entitled to 10 per cent of that amount. Article 2495f, Revised Statutes, provides: "All fees due and not collected, as shown in the report required by article 2495d, shall be collected by the officer to whose office the fees accrued, and out of such part of delinquent fees as may be due to the county, the officer making such collection shall be entitled to 10 per cent of the amount collected by him." Thompson had ceased to be the "officer to whose office the fees accrued" and had no authority to collect the money after he went out of office. That duty devolved upon his successor, and the defendant is not entitled to 10 per cent of the money which he voluntarily collected.

The defendant in error contends that the sum of $190.55, commission on fees collected by him, should not be charged as fees to be accounted for. Article 2495c, Revised Statutes, reads thus: "The maximum amount of fees of all kinds that may be retained by any officer mentioned in this article as compensation for services shall be as follows." The phrase, "fees of all kinds," embraces every kind of compensation allowed by law to a clerk of the county court unless excepted by some provision of the statute. Article 2495g, Revised Statutes, reads as follows: "It is not intended by this act that the commissioners court shall be debarred from allowing compensation for ex officio services to county officials not to be included in estimating the maximum provided for in this act, when in their judgment such compensation is necessary; provided, such compensation for ex officio services shall not exceed the amounts now allowed under the law for ex officio services; provided, further, the fees allowed by law to district and county clerks, county attorneys and tax collectors in suits to collect taxes shall be in addition to the maximum salaries fixed by this act." Article 2495k, Revised Statutes, excepts certain fees of sheriffs from the operation of the law. The exceptions are so definite, that, by implication, all fees not mentioned in the exceptions are excluded therefrom and thereby included within the requirements of the act.

Counsel claim that the court failed to give proper effect to the amendment made by the Legislature to section 10 of the act in question. The language of the original section pertinent to the questions is as follows: "The maximum amount of fees of all kinds that may be retained by any officer mentioned in this section shall be as follows: * * * In counties in which there were cast at the last presidential election 7500 votes, the county clerk, an amount not to exceed $2500, . * * * and in addition thereto, one-fourth of the fees collected by

him." Defendant's counsel assert that this language means that the clerk should first retain one-fourth of all fees and then apply the three-fourths until he had received $2500; but by the terms of the original section, the fees might have been retained to the amount of $2500, and then one-fourth of all fees collected might have been added "thereto," that is, to the $2500 retained. The fallacy of defendant's construction is made manifest by the statement of the proposition. But the amendment introduces into the section the words "the excess of," equivalent to "surplus," which is defined by Bouvier thus: "That which is left from a fund which has been appropriated for a particular purpose; the overplus; the residue." Insurance Co. v. Parker, 34 N. J. L., 479; Insurance Co. v. Commissioners, 76 N. Y., 74. The fees constitute a fund devoted to the payment of the expenses of the office and to ascertain the "excess," or "surplus," every item of expense mentioned in the act must be deducted. The effect of the amendment was not favorable to defendant's position, but we believe that the words "the excess of" were omitted by mistake in the original act, and that the intention was simply to cure the mistake. We have considered it as if in the original section 10.

Counsel for Thompson urge upon the consideration of this court the twelfth section of the Act of 1897, which, applied to the facts, is in substance that when defendant in error desired aid in his office, he was authorized to present an application to the county judge of Ellis County for authority to appoint deputies, accompanied by affidavit "that they were necessary for the efficiency of the public service;" and at the instance of the county judge, to make "a statement showing the need of such deputies." The county judge might authorize the appointment of such number "as in his opinion was necessary for the efficient performance of the duties of said officer," fixing the compensation, "to be paid out of the fees of the office," and not to be "included in estimating the maximum salary" of the clerk.

Before the enactment of that law, county clerks determined for themselves the question of employing deputies and made contracts for their compensation, being personally liable therefor. But the State now determines the necessity for deputies, their number and compensation, and their salaries are payable out of the fees. The clerk is not personally liable further than to receive the fees and pay over the money to the deputies. Out of abundant caution, however, the provision that the compensation of deputies should not be included in estimating the maximum salaries,—that is, not included in the $2500,—was inserted to make sure that the salaries of the deputies should not be a charge upon the clerk. If, however, we are mistaken, then the language must mean that before the "one-fourth of the excess" is estimated, the maximum salary of the officer and the amount paid to deputies shall be deducted, leaving the excess contemplated by the statute. The amount paid to deputies having been deducted would not be included in estimating the "maximum salary," whether it be the fixed

·sum or includes the one-fourth of the excess. The word "estimating" means the act of ascertaining the salary, in which the compensation for deputies must not be included; that is, must be deducted before the estimate is made. Learned counsel fail to show how the amount allowed for deputies is excluded from the estimate of the maximum salary according to their interpretation. Let us try the position by a statement. The whole amount of fees collected after deducting ·$167.50 is $7180.74. The $2500 is fixed; therefore not to be estimated; and we subtract that sum, leaving $4680.74, which includes ·$4151.59 paid deputies. The one-fourth of the excess is to be ascertained, but it can not be computed on $4680.74, because that would include the pay of deputies "in estimating" the one-fourth; hence we must deduct $4151.59 in order to exclude it from the estimate, which would leave $529.15, the excess of which one-fourth is to be taken.

The purpose for which the law was enacted is a matter of prime importance in arriving at a correct interpretation of its terms. If it were true, as claimed, that the object of the Legislature in enacting ·the law was to enlarge the rights of the officers named, it should be ·construed so as to accomplish the legislative intent, and our conclusion would not be correct, because it is not reached from that view point. Before the· enactment of that statute, the officers received and appropriated to their own use all fees derived from the performance of their ·official duties, and their interests would have been best served by leaving the law as it was, as was done with counties having a population ·of 15,000 or less. Where the fees do not amount to the maximum fixed for the officer, he gets no more than the fees yield; if they exceed the maximum allowed, the officer must account for the excess, limiting the existing rights of officials in the fees instead of enlarging them. ·The Legislature undertook to regulate this matter so as to give to ·each officer, out of the fees collected by him, a reasonable compensation for the services rendered, to make the offices self-sustaining, and to apply the excess of fees to public use. To accomplish this end, the business of the offices named is placed strictly on the basis of a public ·service, and the fees are treated as a part of the public revenue to be ·received by the officer and accounted for as directed. So marked is ·this feature of the law that the officer can not remit a fee. The provisions for appointing deputies was made to provide for the contingency that the duties might be greater than the officer could perform and is based upon the inability of the officer to do the work, and that ·the fees would be sufficient to pay the deputies, and the number to be appointed would be regulated by the work to be done and the probable yield of the fees. Placing the authority to determine the number and pay of deputies with the county judge guards the fund against extravagance, while the deputies are protected against exactions of the principal officer by prohibiting him, under severe penalties, to retain any part of the amount allowed them or to pay to them less than the

salary fixed by the county judge.   Sec. 14, p. 11, Laws 1st Spec. Session, 1897.

Whether it be a wise or foolish policy, the Legislature has clearly emancipated the deputies as employes of the principal officer and has relieved that officer from personal liability to the deputies.   What would be their respective rights in case the fees would not compensate principal and deputies is not before the court.   When the services of principal and deputies have been paid for, if there be an excess, the law generously gives one-fourth to the officer.   The fees being collected from the public, the amount in excess of fair compensation for services rendered ought to be returned to the public, which is done by turning it into the county treasury as a part of the county fund.

Counsel for Thompson plant themselves upon what they call the literal meaning of section 10 of the Act of 1897 and seek to subordinate everything to that.   The words of section 10, unaided, designate no sum nor furnish any rule by which to determine the excess upon which to estimate the one-fourth; it would be necessary to resort to construction by supplying words implied and necessary to express the meaning,—according to the defendant's contention, thus:   "In addition thereto, one-fourth of the excess of $2500 of the fees collected by the county clerk."   If we consider the tenth section alone, this would be a correct interpretation, because no sum other than the $2500 would be expressed as a charge against the fund.

We can not, however, consent to be confined to one section of the act in disregard of all other parts even if the language were unambiguous. The paramount rule of construction is to find out the legislative intent, which is the law and must prevail.   Suth. Stat. Const., sec. 218; Runnels v. Belden, 51 Texas, 48; Russell v. Farquhar, 55 Texas, 359.   In Runnels v. Belden, Chief Justice Moore said.   "It is unquestionably a fundamental canon of construction that such interpretation shall be given to acts of the Legislature as will effectuate the intent and purpose of the lawmakers in their enactments, when the intent of the law is plain and obvious, rather than to follow its literal import or mere grammatical construction."   In the case of Russell v. Farquhar, the same learned judge used the following language:   "If courts were in all cases to be controlled in their construction of statutes by the mere literal meaning of the words in which they are couched, it might well be admitted that appellants' objection to the evidence was well taken. But such is not the case.   To be thus controlled, as has often been held, would be for the courts in a blind effort to refrain from an interference with legislative authority by their failure to apply well-established rules of construction to, in fact, abrogate their own power and usurp that of the Legislature, and cause the law to be held directly the contrary of that which the Legislature had in fact intended to enact.   While it is for the Legislature to make the law, it is the duty of the courts to 'try out the right intendment' of statutes upon which they are called to pass, and by their proper construction, to ascertain

and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its intent, and to follow which would pervert that intent."

The evil results consequent upon an adherence to literalism in construing a statute, so clearly set forth by Judge Moore, are well illustrated by the construction contended for by defendant. From the language of the whole Act of 1897, it is plain that the Legislature intended to make efficiency in the public service the standard by which the affairs of the offices named should be regulated and conducted. When the defendant Thompson applied to the county judge for authority to appoint deputies, he virtually affirmed two propositions; first, that the duties of the office were greater than he could perform alone, which showed a necessity for the appointment of deputies; and second, that the fees of the office would be sufficient to pay for the aid needed. The latter fact would appear from the statement which might have been demanded by the county judge, who was required to keep in view the promotion of the public service and who, in determining the number of deputies necessary to "the efficient service of the public" and the salary to be allowed to each, must have had in mind the service required and the probable amount of the fees of the office. Let us try construing the law in the interest of the officer by a statement of the account and note the result. The fixed salary of the clerk is $2500. By determining the number of deputies to be appointed and fixing their compensation, the cost of their services per annum could be ascertained, which we will place at the actual cost, $4151.59, and, from the statement, an estimate of the fees could be made, which, for present purposes, we will fix at the sum actually collected, $7180.80. Deduct $2500, fixed salary, and there remains $4680.80; add one-fourth of that amount, $1170.20, to the salary of the clerk, and he would receive $3670.20, leaving $3510.40 to be applied to the payment of the deputies for their services, worth $4151.59. The clerk would get $1170.20 more than the value of his services and the deputies would receive $641 less than the amount allowed. The result would be that the number of deputies must be reduced so as to bring their compensation within the amount of fees collected, whereby the public service would suffer, or they must be denied fair pay for their labor. This interpretation sacrifices everything to the private interests of the officer. Construed according to the obvious intention of the Legislature, the deputies would receive the fair value of their labor, the clerk would receive the full value of his services, and "in addition thereto, one-fourth of the excess," leaving a small sum for the county treasury, and "the efficiency of the public service" would be maintained.

It is ordered that the motion for rehearing be granted and that the judgment heretofore entered be set aside. It is ordered that the

judgment of the District Court and Court of Civil Appeals be reversed, and this court will now render judgment in favor of Ellis County against T. F. Thompson for the sum of $217.17, with 6 per cent interest per annum from November 23, 1898, to this date, and for the sum of $179.67, with 6 per cent interest from May 26, 1900, aggregating $455.04, to bear 6 per cent interest from date.

*Reversed and rendered.*