ALBERT HAUSSER v. WILLIAM L. MULLIGAN.

No. 7002.   Decided July 21, 1937.
(107 S. W., 2d Series, 870.)

118

*Conger, Low & Spears,* of San Antonio, for appellant.

*Church & Graves* and *Meritt H. Steger,* of San Antonio, for appellee.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The question before us is upon certificate from the San Antonio Court of Civil Appeals. A summary of certain of the facts stated in the certificate together with excerpts from the certificate will suffice as a basis for stating the question.

On January 1, 1933, Albert Hausser was the sheriff of Bexar County. He made application to the commissioners' court for the appointment of various deputies, including W. L. Mulligan. The application was granted, Hausser made the appointment, and Mulligan served from January 1, 1933, to February 1, 1934. Hausser in his application set out the necessity for the deputies and requested that their salaries be fixed by the court at $175.00 per month, to be paid out of fees of office as the law directs. On May 1, 1933, the sheriff, in the language of the findings of the trial court, fearing

" * * * that his office would not earn sufficient fees to enable him to pay his expenses of office, his full maximum, and the stipulated salaries of his deputies, applied to the commissioners' court for, and obtained, a reduction in the salaries of his deputies from $175.00 to $150.00 per month. At the time of the reduction the sheriff informed his deputies that he was

going to reduce their salaries to $150.00 per month, but that if the office earned enough to pay all expenses, and his full maximum, and there remained anything over, he would make up the difference in their salaries to the original $175.00. All the deputies accepted the reduction without protest. Afterwards the sheriff discussed the matter with the county auditor, who told the sheriff that he could not in any event pay his deputies more than the salaries stipulated by the commissioners' court, and the auditor advised the sheriff, if he wished to be able to carry out his proposed plan with his deputies, that he had better have the commissioners' court rescind the order reducing the salaries to $150.00 and leave the salaries at $175.00; then if he made an excess of fees sufficient to make up the difference between $150.00 and $175.00 he could do so. At the instance of the sheriff, the order reducing the salaries of his deputies to $150.00 was rescinded, leaving the previous order allowing the salaries of $175.00 in force and effect."

Mulligan and the other deputies continued to work under the arrangement without protest. According to the trial court's findings the sheriff relied upon the auditor's advice and made the arrangement in good faith. The court further found that the deputies continued working hoping they would at the end of the year receive at least some of the difference between the salary as specified in the court's order and the reduction agreed to in the manner stated.

The court further found that the sheriff made in excess of $10,000 net which he applied to his "excess fees" maximum, and that the deputies received $150.00 per month from and after the date of the reduction of their salaries.

In February, 1934, the sheriff notified his deputies that he would be compelled to further reduce their salaries to $125.00 effective March 1, 1934, under an arrangement the same as that previously made with respect to their receiving the full $175.00 per month if the office earned a sufficient excess of fees.

Upon the trial of the cause Mulligan was awarded judgment for back salary from May 1, 1933, to February 1, 1934. Hausser appealed.

At this point we quote further from the certificate:

"Appellee makes the contention, among others, that the agreement of appellee, as a deputy sheriff, to accept less compensation than that fixed in the sheriff's application to the commissioners' court, and that court's order approving same, was void, as against public policy, and therefore not binding upon the deputies.

"On the other hand, it is contended by appellant that appellee, having agreed, under the peculiar facts found by the trial court, to the reduced rate of compensation, and having continued in the service under that agreement, and received and accepted the agreed minimum throughout that service, without protest or objection, was estopped to thereafter deny the binding effect of that agreement.

"The Court of Civil Appeals of the Second Supreme Judicial District has recently decided the question adversely to appellant's and in favor of appellee's contentions, (Maryland Casualty Co. v. The State, 81 S. W. (2d) 165), and Your Honors have granted writ of error in that case upon the very point indicated. Some of the members of this Court are in doubt upon the point raised, which is material to the decision of this case, and in view of the course of the cited case, and in order that the question may be settled by Your Honors before final action in this cause by this Court, we deem it advisable to, and do hereby respectfully, certify for Your Honors' decision the following:

"QUESTION: In view of his agreement (under the facts found by the trial court) to accept less compensation than that fixed in the application for and order of his appointment, and of his continuance in the service and acceptance of the agreed lesser amount, from month to month, without complaint, Was appellee estopped to deny, at the end of the period of his service, the binding effect of his agreement?"

It is without bearing so far as the question of estoppel is concerned that the 1931 amendment of Article 3902 was controlling in the Maryland Casualty Company case, supra, as to certain questions there presented, rather than the 1931 amendment of the same article which is controlling as to similar questions in this case.

In view of the determination this day of the estoppel question presented in the Maryland Casualty Company case referred to, 130 Texas 206, 107 S. W. (2d) 865, which arose upon facts similar in all essential respects to those set out in the certificate, we answer the certified question in the negative.

Opinion adopted by the Supreme Court July 21, 1937.