MARYLAND CASUALTY COMPANY V. STATE OF TEXAS ET AL.

No. 6931.  Decided July 21, 1937.
Rehearing overruled October 13, 1937.
(107 S. W., 2d Series, 865.)

*Cantey, Hanger & McMahon,* and *Warren Scarborough,* all of Fort Worth, *Dan Moody, J. B. Robertson,* and *T. B. Greenwood,* all of Austin, for plaintiff in error.

The orders of the commissioners' court, even if they had otherwise been effective to fix rather than permit maximum salaries, were expressly conditioned upon the aggregate of fees taken into the clerk's office being sufficient to pay the maximum salaries, and since the fees for the years 1931 and 1932 were

not sufficient therefor, the expressed condition failed and there was no order fixing or authorizing the maximum salaries, therefore the agreements to pay less than the maximum were valid and binding. Neeper v. Stewart, 66 S. W. (2d) 812; Cameron County v. Fox, 61 S. W. (2d) 483; Hood v. State, 73 S. W. (2d) 611; 9 Tex. Jur. 243.

*Thompson & Barwise, McDonald & Floyd, A. J. Baskin, Arthur Lee Moore,* and *Morris Williams,* all of Fort Worth, for defendants in error.

Beall having appropriated to his own use several thousand dollars of the fees applicable to the payment of the deputies' salaries, he is liable for said salaries and the judgments of the trial court and Court of Civil Appeals should be affirmed. Ellis County v. Thompson, 95 Texas 22, 64 S. W. 927; State v. Johnson, 52 S. W. (2d) 110; Tabor v. McKenzie, 49 S. W. (2d) 874.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The State of Texas for the use and benefit of Mary Dean Bell and several others, the real plaintiffs, all of whom will hereinafter be designated as deputies, sued Orville Beall, who was formerly the county clerk under whom plaintiffs served as deputy clerks, Maryland Casualty Company, the surety on his official bond, John M. Moore, county treasurer, and W. M. Miller, the successor county clerk to Beall, to recover parts of respective salaries for service as deputies, in addition to that already paid them. They sought to recover not only against Beall, but against the surety also. It is alleged by plaintiffs that the suit is brought in their own right as well as by the State for their use and benefit. The suits thus brought were consolidated with the suits brought by other deputies in their own right. Judgment was rendered in favor of all of the deputies (except one who did not appeal) against both Beall and the surety for the respective amounts set out in the judgment. Beall did not appeal. Upon appeal by the surety the Court of Civil Appeals affirmed the judgment. 81 S. W. (2d) 165.

The bond is conditioned that Beall "shall faithfully perform and discharge all the duties required of him by law as county clerk * * * and pay over to his county all moneys illegally paid to him out of county funds, as voluntary payments or otherwise * * *."

The gist of the complaint of the deputies against Beall is that he unlawfully diverted to himself fees collected by the of-

fice which it was his duty under the law to pay over to them as compensation for their fixed salaries. The allegation is also made that in the event the deputies are mistaken in the allegation that the fees were sufficient to pay their salaries in full, they were entitled to have the total fees collected and earned by the office, after certain alleged payments had been made therefrom, applied ratably toward the payment of their full salaries, and that Beall was derelict in his duty to the extent of breaching the conditions of his bond in not paying over to them ratably the amount of such fees.

On January 1, 1931, Beall made sworn application to the commissioners' court to appoint deputies. The appointments were approved "at the salaries specified in the application" by an order duly entered by the court. The salaries specified were the maximum salaries "for the department to which he or she might be assigned, in accordance with the provisions of law pertaining to the appointment of deputies or assistants." The order further stipulates that the appointments are approved at the salaries specified "provided the fees in said office are sufficient to pay maximum salaries provided by law."

The company contends that the order of the commissioners' court granting Beall's application to appoint his deputies did not have the. effect of fixing their salaries at the respective maxima allowed by law, but merely conferred upon him authority to do so if he should so elect, and that the agreement with him on the part of the deputies to accept a salary smaller than the maximum was valid and binding.

The question necessary first to be determined is whether under the law the order of the commissioners' court was effective to fix the salaries of the deputies at the respective maxima allowed by law, or was effective merely to establish such maxima as a limit within which the clerk and the deputies by private agreement might fix their respective salaries.

■ The public policy of the State with respect to whether final authority rested in an officer requiring the assistance of deputies whose salaries were to be paid out of fees of office to fix their salaries, or rested finally in the commissioners' court to do so, was declared by this Court in construing what is known as the original fee bill. Ellis County v. Thompson, 95 Texas 22, 64 S. W. 927, on rehearing 95 Texas 30, 66 S. W. 48.

The bill referred to was passed nearly forty years ago at a special session of the 25th Legislature. Gammel's Laws of Texas, Vol. 10, p. 1445. The officers designated in Section 10 thereof as coming under its provisions include among others county clerks. Section 12 of the act reads:

"Whenever any officer named in Section 10 of this Act shall require the service of deputies or assistants in the performance of his duties, he shall apply to the county judge of his county for authority to appoint same, and the county judge shall issue an order authorizing the appointment of such a number of deputies or assistants as in his opinion may be necessary for the efficient performance of the duties of said officer. The officer applying for appointment of a deputy or assistant, or deputies or assistants shall make affidavit that they are necessary for the efficiency of the public service; and the county judge may require, in addition, a statement showing the need of such deputies or assistants, and in no case shall the county judge attempt to influence the appointment of any person as deputy or assistant in any office. The maximum amount allowed for deputies or assistants for their services shall be as follows, to-wit:

"First assistant or chief deputy, a sum not to exceed a rate of $1,200 per annum, others not to exceed a rate of $900 per annum.

"The county judge in issuing his order granting authority to appoint deputies or assistants, shall state in such order the number of deputies or assistants authorized and the amount to be paid each, and the amount of compensation allowed shall be paid out of the fees of office to which said deputies or assistants may be appointed, and shall not be included in estimating the maximum salaries of officers named in Section 10 of this Act."

Section 14 of the act, now Article 102 of the Penal Code, provides that any officer named in Section 10 thereof "who shall pay his deputy or assistant a less sum than the amount specified in his sworn statement * * * shall be deemed guilty of a misdemeanor," and affixes a penalty for the offense.

In the case cited Judge BROWN, speaking for this Court in the opinion upon rehearing, says with respect to fixing the compensation "to be paid out of the fees of the office," that:

"Before the enactment of that law, county clerks determined for themselves the question of employing deputies, and made contracts for their compensation, being personally liable therefor. But the State now determines the necessity for deputies, and their salaries are payable out of the fees. The clerk is not personally liable further than to receive the fees and pay over the money to the deputies. * * * Placing the authority to determine the number and pay of deputies with the county judge guards the fund against extravagance, while the deputies are protected against exactions of the principal officer by prohibit-

ing him, under severe penalties, to retain any part of the amount allowed them, or to pay to them less than the salary fixed by the county judge. Section 14, p. 11, Laws Sp. Sess. 1897. Whether it be a wise or foolish policy, the Legislature has clearly emancipated the deputies as employees of the principal officer, and has relieved that officer from personal liability to the deputies."

The quoted provisions of the act and the foregoing excerpt from the opinion reflect the public policy of the State with respect to the method of fixing the salaries of deputies and assistants of officials coming within the terms of the original fee bill. Clearly an attempted fixing of the salaries of deputies by private agreement between such officer and his deputies would have been in violation of public policy and void.

The statute applicable in the matter of fixing the salaries of the deputies in the present case, deleting and omitting immaterial portions, is Article 3902 of the Revised Statutes as amended in 1931. General Laws 42d Legislature, Chap. 214, p. 364. There were prior amendments of the original fee act and it has been several times subsequently amended, but none need be here referred to other than the one in force at the time Beall made application for the appointment of his deputies. The pertinent provisions of this amendment read:

"Whenever the * * * county clerk * * * shall require the services of deputies or assistants in the performance of his duties, he may apply to the county commissioners' court of his county for authority to appoint such deputies or assistants, setting out by sworn application the number needed, the position sought to be filled, and the amount to be paid. Said application shall be accompanied by a statement showing the probable receipts and disbursements of the office; and said court may make its order authorizing the appointment of such deputies and fix the compensation to be paid them and determine the number to be appointed; * * *. Upon the entry of such order the officers applying for such deputies shall be authorized to appoint them as provided by law; provided, that said compensation shall not exceed the maximum amount hereinafter set out. * * *

"The maximum compensation which may be allowed for deputies and/or assistants to the officers above named for their services shall be as follows, to-wit: * * *."

The following excerpt from the opinion of the Court of Civil Appeals is here inserted in lieu of the language of the act stipulating the maximum salaries that might be paid:

"The statute * * * fixed the annual maximum salary for the chief deputy at $3,000.00; the maximum annual salary for

heads of departments at $2,700.00 when such heads of departments shall have previously served the county for not less than two continuous years, but limited the annual salary for such heads of departments to $2,400.00 when the head of such department had served the county less than two continuous years. The statute further provides that of all other deputies and assistants 50% of the number so appointed may be paid at a rate not to exceed $2,500.00 per year, providing further that such rate should be allowed only to deputies in service for two years or more, and that all other deputies and assistants so appointed be paid at a rate not to exceed $2,100.00 per year."

"The county commissioners' court in each order granting authority to appoint deputies or assistants shall state the number of deputies or assistants authorized and the amount of compensation to be allowed each deputy or assistant, which compensation shall be paid out of the fees of the office to which such deputies or assistants may be appointed and assigned, and shall not be included in estimating the maximum fees of the officers named above. The salaries referred to shall not be paid by the county, but are to be paid out of the fees of the office in the following manner:

"First, out of any current fees collected, and second, if such fees are not sufficient, then out of any delinquent fees collected which are due to the county after all legal deductions are made, and if there be any balance remaining after payment of the maximum fee, compensation and excess fees due such officer or officers and the compensation of such deputy or deputies, such balance shall be paid to the county treasurer. * * * Acts 1931, General Laws 42d Leg., Ch. 214, p. 364."

It will be noted that at the time of Beall's application the only material change made in the original act by the amendment touching the appointment of deputies is that the amendment requires the officer to make application to the entire commissioners' court rather than to only the county judge, and to set out under oath rather than by unverified statement certain specified matters; also that no language is used indicating that the salaries may be fixed by private agreements between the officer and his deputies. The Legislature authorized no change in the general method of procuring deputies. The amendment affords no basis for concluding that the State's public policy with respect thereto of more than thirty years' standing was abrogated by its terms. In the absence of clear language on the part of the Legislature providing a different method than that already established no other is permissible. Hence it follows that the law as declared in Ellis County v. Thompson, supra,

unequivocally condemning as contrary to public policy the fixing of deputies' salaries by private agreement, applies with equal vigor in the present case to condemn and nullify any attempted private agreements of Beall and his deputies to fix the salaries. The order of the commissioners' court was effective until changed by a subsequent order, to fix the salaries at the respective maxima allowed by law, and did not merely establish such maxima as a limit within which Beall and his deputies might agree privately as to the compensation to be paid.

■■ The order fixing the salaries at the maximum therein provided is not lacking in definiteness.

While the amendment provides the court may fix the salaries of certain of the deputies on the basis of an increased maximum conditioned upon a specified previous term of continuous service of the county where a necessity for such increase is shown, no such previous service was referred to either in the application or the order entered by the commissioners' court, nor was any necessity for paying the increased maximum to any deputy referred to in either. The order of the court is not fairly susceptible of any other construction than that all salaries were fixed at the regular maximum. Nor is the order lacking in definiteness because of its proviso to the effect that the salaries specified were to be paid in the event the fees of the office were sufficient. The commissioners' court by adding to the order the proviso relating to the sufficiency of the fees merely made clear by stipulation what the law wrote into the order by virtue of the specific provision of the amendment that the salaries "shall not be paid by the county, but are to be paid out of the fees of the office * * *."

■ The conclusions just stated are in accord with the conclusions of the Court of Civil Appeals. We concur in its holding also to the effect that it was Beall's duty to pay over to his deputies ratably the amount of the fees of office available for deputy hire on the basis of the salaries allowed by law and fixed in the order. The order fairly construed was an appropriation of such fees to be used by him for that purpose and in the manner designated in the amendment. During Beall's tenure of office the yearly salary provided was $2,750 per year. Art. 3883a, R. S. 1925. He was entitled to "retain all excess fees" as additional compensation "until the same, together with the maximum fees allowed by Articles * * * 3883a * * * shall amount to the sum of Twelve Thousand Five Hundred ($12,500) Dollars; * * *." Gen. Laws 42d Leg., Chap. 368, p. 870. The amend-

ment cited (amending Article 3891, R. S. 1925, as amended by Chap. 20, Acts 4th Called Session 41st Leg.) provides also that:

"All fees collected by officers named in Articles * * * 3883a * * * during any fiscal year in excess of maximum amount allowed by law, and of the amounts of excess fees allowed by this article for their services, and for services of their deputies, or their assistants as herein provided for, shall be paid into the county treasury of the county where the excess accrued, * * *."

The amendment also provides what shall be deemed "excess fees" in the following language:

"If the fees of such office collected in any year be more than the amount needed to pay the amount allowed such officer and his assistants and deputies, same shall be deemed excess fees, * * *."

It will be noted that the additional compensation allowed above the $2,750.00 maximum provided by Article 3883a is payable out of excess fees only, the Legislature thus preserving the public policy fixed by the original fee bill. The following additional excerpt from Ellis County v. Thompson, supra, is pertinent:

"The Legislature undertook to regulate this matter (the procuring of deputies) so as to give each officer, out of the fees collected by him, a reasonable compensation for the services rendered, to make the offices self-sustaining and to apply the excess of fees to public use. To accomplish this end, the business of the offices is placed strictly on the basis of a public service, and the fees are treated as a part of the public revenue to be received by the officer and accounted for as directed. So marked is this feature of the law that the officer can not remit a fee. The provision for appointing deputies was made to provide for the contingency that the duties might be greater than the officer could perform, and is based upon the inability of the officer to do the work, and that the fees would be sufficient to pay the deputies, and the number to be appointed would be regulated by the work to be done and the probable yield of the fees."

It has already been pointed out by an excerpt from the opinion just quoted that placing the authority to fix the pay of the deputies with the county judge (here the commissioners' court) protects them against exactions from the appointing officer by prohibiting him "under severe penalties, to retain any part of the amount allowed them, or to pay them less than the salary fixed * * *."

Beall appropriated the fees of the office in excess of his annual maximum provided by Article 3883a, and the amount of his bond premium, to-wit, excess fees, for the purpose of paying the additional compensation allowed him by Article 3891 as amended. His retention of such excess fees and failure to apply them toward the payment of the salaries of his deputies, as provided by law, constituted a breach of his official bond. Ellis County v. Thompson, supra; State v. Turner, 101 Md. 584, 61 Atl. 334 (opinions in both cases cited and quoted from in the opinion of the Court of Civil Appeals).

■ The surety company urges that the deputies, having entered into private agreements respectively with Beall to work for salaries smaller than the maximum allowed by law and having thereafter accepted such smaller salaries, were thereby estopped to claim the additional compensation fixed by the order of the commissioners' court.

The matter of fixing the salaries was not only not a lawful subject matter of private contract between Beall and his deputimes, but was in violation of public policy. The agreements sought to be made were not binding upon either the deputies or Beall. Both the deputies and Beall were presumed to know that the deputies by agreeing privately to accept as compensation for their services to the State and county smaller amounts than were fixed as required by law, did not thereby waive their respective claims to such balances of the fees as had been lawfully appropriated by court's order for the payment of their salaries. Greer v. Hunt County, (Com. App.) 249 S. W. 831. The subsequent retention by Beall of fees of office which should have been applied toward payment of their salaries did not work an estoppel. Permission to make the unauthorized application made by Beall of the fees of office toward the payment of his "excess fees" maximum, was not a part of the private arrangement which he attempted to make with his deputies. We concur in the holding of the Court of Civil Appeals that the deputies were not estopped to assert their respective claims.

Furthermore Beall was not in position to urge estoppel against the deputies. The arrangement sought to be made was in violation of the public policy of the State. It was no part of the causes of action asserted by the deputies. It was invoked by Beall as an equitable defense by way of estoppel. Certainly it was not a defense that was available either to him or to the surety company. Hall v. Edwards, (Com. App.) 222 S. W. 167.

None of the deputies except Jack Lowe sued for more than the regularly designated maximum salary of $2,100. Judgment was rendered in his favor on the basis of an increased maxi-

mum of $2,500 for the sum of $188.93 (stated through typographical error in the opinion of the Court of Civil Appeals as $888.98). Judgment should have been rendered for him on the basis of his salary's having been fixed at $2,100, and therefore for only twenty-one twenty-fifths of the amount awarded on the erroneous basis of $2,500, to-wit, $158.70. No assignment of error is directed at this small discrepancy in amount either in the Court of Civil Appeals or in this Court, and is here treated as waived. It is referred to only for the purpose of showing that no salary basis is herein recognized as correct save that fixed by the order of the commissioners' court.

The judgments of the trial court and Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court July 21, 1937.

Rehearing overruled October 13, 1937.