THE STATE OF MARYLAND, Use of WILLIAM SMITH, *vs.* BARREDA TURNER et al.

*Appeal from Pro Forma Order—Bond of a Clerk of Court is Liable for Salaries of Deputy Clerks.*

A rule of this Court prohibits the hearing of any appeal from a *pro forma* order or judgment. It is the practice among the judges of Baltimore City to follow a ruling made by one of said judges until it is reversed on appeal. When this case was called below, the trial judge directed the judgment appealed against to be entered without argument or consideration, because the question involved had previously been so decided by another judge of said city. *Held*, that the judgment so rendered is not one made *pro forma* within the meaning of the rule of this Court.

The condition of the bond of a Clerk of Court was that he "shall faithfully perform all the duties now required of him by law as such clerk." Constitution, Art. 4, sec. 26, requires Clerks of Courts to appoint subject to the confirmation of the Judges of their respective Courts, as many deputies under them as the said Judges shall deem necessary to perform, together with themselves, the duties of the said office, and whose compensation shall be according to statutory provisions. Under Art. 3, sec. 45, the compensation of Clerks and their assistants is payable out of the fees or receipts of their offices. Code, Art. 17. sec. 16- requires the Comptroller to fix the compensation of the assistant clerks or deputies to be employed by the Clerks of Courts. In an action against a Clerk of Court and the surety on his bond, conditioned as above set forth, by a deputy clerk to recover a balance due him on account of his salary, and for a sum due for recording papers in the office, *held*, that the duty of the Clerk to employ deputies, at salaries fixed by the Comptroller, necessarily carries with it the duty to pay the salaries so fixed, such payment being an official act, and that consequently the surety on the bond of the Clerk is liable for his non-payment of the salary of the deputy clerk and for the fees due him for recording.

*Held*, further, that in such action it is not necessary to aver in the declaration that the Clerk had received fees sufficient for the payment of salaries, that being a matter of defense.

Appeal from the Baltimore City Court.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellant.

*Frank G. Turner* (with whom were *Isidor Rayner* and *J. Kemp Bartlett* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action brought in the name of the State for the use of William Smith, a deputy in the office of Barreda Turner, Clerk of the Circuit Court of Baltimore City, upon the official bond of said Turner to recover for services rendered by Smith as such deputy, in the performance of the duties of the office. The United States Fidelity and Guaranty Company is the surety upon said bond, the condition of which is as follows: "If the above bounded Barreda Turner, whilst he shall continue in the office of the Clerk of the Circuit Court of Baltimore City, shall faithfully perform all the duties now required of him by law, as such Clerk, then the above obligation to be void, otherwise to be and remain in full force and virtue in law."

The original declaration, after reciting the bond, alleged that one of the duties required of Turner by law was the appointment of proper deputy clerks, and the payment to them of proper salaries; that Turner appointed Smith as one of such deputy clerks, and agreed to pay him a salary of $1,040 per annum which was a fair and reasonable salary; that this appointment was duly confirmed by the Judge of said Court, and that the said salary was approved by the Comptroller o the State; that there was still due and owing to said Smith on said salary, the sum of $274, and an additional sum of $474 for recording, being necessary work of said office, and which sum said Turner promised to pay, but that neither of said sums had been paid though demand had been duly made on

both defendants therefor.    There was a demurrer to this dec-
laration, and it appears from the appellee's brief, and the state-
ment of appellant's counsel, that the ground upon which this
demurrer was argued was the omission in the declaration to
allege that Turner had collected a sufficient amount of fees as
clerk to enable him to pay the balance of salary due and the
amount due for recording.    This demurrer was argued before
JUDGE HARLAN, who sustained the same.    An amended dec-
laration was then filed supplying the omitted allegation in the
former declaration, and this demurrer was sustained by JUDGE
DOBLER, upon the ground that the payment of the deputy's
salary and of the recording fees due him were not duties required
of the clerk by law, and therefore not within the condition of
the bond.    Judgment was given against plaintiff for costs and
this appeal was brought.    When the case was called for argu-
ment in this Court, a motion to dismiss was filed, supported
by affidavit of defendant's counsel, alleging that the demurrer
to the amended declaration "was sustained by consent, and
judgment on demurrer was entered *pro confesso* in open Court,
without argument, and without the submission of briefs or
consideration by the Court," and that the appeal was in vio-
lation of a rule of this Court prohibiting the hearing of any
appeal from a *pro forma* order, judgment or decree.    It ap-
pears however from a counter affidavit of Mr. Cook, counsel
for appellant, to which no response has been made, that on
deciding the demurrer to the original declaration JUDGE HAR-
LAN held that the payment of salary and recording fees to the
deputy was not a duty required of the clerk by law, and that
when the demurrer to the amended declaration was set for
hearing before JUDGE DOBLER, who in the meantime had suc-
ceeded JUDGE HARLAN in the City Court, he stated to counsel
that he would feel compelled to follow the decision of JUDGE
HARLAN, as it was conceded the amendment did not meet the
point decided by JUDGE HARLAN adversely to the plaintiff, it
being the practice among the Judges of the Supreme Bench
of Baltimore City to follow a ruling made by any one of said
Judges until the same is reversed by the Court of Appeals;

this affidavit not being replied to, or controverted in argu-
ment, the order of JUDGE DOBLER sustaining the demurrer to
the amended declaration cannot be regarded as a *pro forma*
order, but as the adjudication of the question argued before
JUDGE HARLAN, and as the result of that argument.    The mo-
tion to dismiss must therefore be overruled.

The only question in this case is the liability of the surety,
and this must depend upon the language of the bond.    It is
familiar law that the contract of a surety upon an official bond
is subject to the strictest interpretation.    *Archer* v. *State*, 74
Md. 450; *Howard County* v. *Hill*, 88 Md. 120.    The case
last mentioned was a suit upon the official bond of Hill, as
Secretary and Treasurer of the Board of County School Com-
missioners of Howard County, to recover money alleged to
have been paid out by him without warrant of law, and in vio-
lation of his bond.    The condition of the bond prescribed by
sec. 67 of Art. 77 was "to pay over and apply all moneys that
should come into his hands as treasurer, to such persons, and
in such manner, as the board may *under the provisions of this
article*, direct."    In the bond executed, the words we have
italicised were omitted, and it was held the surety was not lia-
ble for payments directed by the board, but not warranted by
that article.

There the effort was to read into the bond a condition, which
ought to have been, but plainly was not written in.   Here there
is no such attempt.    The language of the condition, "faith-
fully to perform all the duties required of him by law," is
neither ambiguous nor equivocal.   The bond however is silent
as to what those duties are.    They can be ascertained by ref-
erence to the Constitution and laws of the State and the es-
tablished practice of the Courts in administering these laws.
While the liability of the surety is not to be enlarged by mere
implication, yet in the effort to ascertain what these duties are,
a reasonalbe construction is to be given to the language of the
statutes dealing with these duties, and the construction is not
to be strained in order to effect a release of a surety, whose ob-
ligation is deliberately entered into, as a  commercial transac-

tion, and with the exclusive view to the pecuniary profit re-
sulting from it.   With these principles in view, we will now
inquire what light is thrown upon the question to be deter-
mined by the provisions of the Constitution and laws of the
State relating to clerks and their deputies.

Section 26 of Article 4 of the Constitution of Maryland re-
quires the Clerks of the Circuit Courts of the several counties
of the State to "appoint, subject to the confirmation of the
Judges of their respective Courts, as many deputies under
them as the said Judges shall deem necessary to perform, to-
gether with themselves, the duties of the said office, who shall
be removable by the said Judges for incompetency or neglect
of duty and whose compensation shall be according to exist-
ing or future provisions of the General Assembly;" and section
37 of the same Article declares that "the provisions of this Ar-
ticle in relation to the appointment of deputies by the Clerks
of the Circuit Courts in the counties shall apply to the Clerks
of the Courts in Baltimore City."

Sec. 45 of Art. 3 of the Constitution limits the compensa-
tion of Clerks of Courts and Registers of Wills in the coun-
ties to $3,000 a year and of the same officers in the city of
Baltimore to $3,500 a year, over and above office expenses and
compensation to assistants, and then provides that "such
compensation of Clerks, Registers, assistants and office ex-
penses shall always be paid out of the fees or receipts of the
offices respectively; but special protection is given to the
Clerks of the Courts in Baltimore City by sec. 37 of Art. 4,
already referred to, which provides that the salary of each of
said Clerks "shall be payable only out of the fees and receipts
collected by the Clerks of said city," and by sec. 12 of Art.
17 of the Code, which provides that whenever the receipts of
any Clerks of the Courts of Baltimore City are insufficient
"*after the payment of all necessary expenses*, to pay such Clerk
the salary provided by the Constitution, and said Clerks, or
any of them, shall, under section first, Article fifteen of the
Constitution, have paid to the State any sum or sums of money
as excess, after retaining his salary, such excess is hereby ap-

propriated to the payment of the salary or salaries so in arrear until each of said Clerks shall have received the full amount thereof; and it shall be the duty of the Comptroller of the State to draw a warrant upon the State Treasurer for the payment of said arrears out of the said excess, not to exceed the amount so in arrear, and not to exceed the whole amount of said excess paid into the treasury of the State."

Sec. 16 of Art. 17 requires the Comptroller from time to time, "to limit and fix the compensation of the assistant clerks or deputies to be employed by the several Clerks of the Courts of this State," and provides "that no account for compensation for services of any assistant clerk, deputy or other person employed in performing any of the duties pertaining to the office of any such clerks shall be allowed, until such assistant clerk or other person employed shall have certified under oath that the same services have been performed, that he has received the full sum therein charged to his own use and benefit, and that he has not paid, deposited or assigned, nor contracted to pay, deposit, or assign any part of such compensation to the use of any person, or in any way, directly or indirectly paid, or given, or contracted to pay or give any reward or compensation for *his office*, or employment, or the emoluments thereof."

Sections one to forty-one of Article 17 of the Code of Public General Laws are included under the head of "General duties of Clerks." These enumerate many specific duties and powers of the Clerks, but there is nowhere any *express* declaration of the duty to pay his deputies the salaries fixed by the Comptroller.

The only express reference in those sections to the liability of the Clerk's official bond is in sections nine and fifteen, which provide that it shall be answerable for all public money received by him, and the emoluments of his office over and above the sum prescribed by the Constitution; but it would have been liable without those provisions, since the duty so to pay over is fixed by other provisions of law, and no sound argument can be deduced from the absence of any express declara-

tion of the liability of the bond for a deputy's salary, but no express enumeration of this duty is necessary.

The true theory is, we apprehend, that the bond is designed for the protection of all who are concerned in the performance of the ministerial duties of the Clerk, whether such duties are, or are not specifically enumerated as such, and it is for that reason that the bond has been held liable for failure to transmit a transcript in time, as in *Collins* v. *McDaniel*, 66 Geo. 203; and for failure to enroll a judgment, as in *Strain* v. *Babb*, 30 So. Ca. 342; and this was the view expressed by this Court in *State, use of Whitehill*, v. *Carrick*, 70 Md. 586, where the bond of a Justice of the Peace was held liable for failure to issue a writ of *retorno habendo*.

There is no discretion as to the employment of deputy clerks. Under the 26th section of Art. 4 of the Constitution, the duty to appoint is imperative. There is no absolute discretion as to whom the clerk shall appoint. He can appoint no one without the approval of the Judge of his Court, nor can he retain him if found by the Judge to be incompetent or negligent, and the only reason for these provisions is that the proper performance of the duties of the office, so many of which can only be performed with due promptness by the aid of deputies, may be guaranteed to the public. He cannot appoint a greater number of deputies than the Court deems necessary for the discharge of the duties of the office, and he cannot refuse to appoint such number as the Court may require. He cannot himself fix and limit the salaries to be paid to his deputies, but must allow such as the Comptroller of the State shall determine to be just and proper. The manifest purpose of this provision is to prevent the wrongful absorption of the receipts of the office by excessive salaries on the one hand, and to secure the services of competent persons by the assurance on the other hand of just and reasonable compensation. In no clerk's office in the State would it be possible for the clerk unaided to perform all the clerical work when and as it should be done for the protection of the public, and it was this consideration which caused the framers of the Con-

stitution to embody in that instrument the duty of appointing deputies, and the power of confirmation and supervision conferred upon the Court. Deputies are not mere servants or agents of the clerk; they are agents and officers of the Court, being appointed, in the language of the Constitution, "to perform, together with (the clerks) themselves the duties of the said office." It would seem that the duty to employ deputies, at certain salaries fixed by the chief accounting officer of the State, should necessarily carry with it the corresponding duty to pay the salaries so fixed, and that the payment of salary, under such circumstances is as essentially an official act as the act of appointment. But this conclusion is not left to mere inference. Section 12 of Art. 17 of the Code, already quoted herein, in providing as it does that "whenever the fees or compensation of any of the clerks of Baltimore City shall, *after the payment of all necessary expenses*, fail to pay such clerk the salary provided for by the Constitution" that such deficiency shall be made good from the Treasury of the State in the manner provided in said section, in effect dedicates the receipts of the office primarily to the payment of all necessary expenses, chief among which are the salaries of deputies, and forbids the clerk to appropriate any of these receipts to his own salary until after such expenses are paid. Until payment of such expenses, the receipts of the office are public moneys in his hands to be applied to such payment, and his bond, in reason and justice is as much answerable to the deputies who are entitled to so much of those receipts, as it is to the State for any excess of receipts over and above such expenses and his own salary, and this view is confirmed by section 16 of Art. 17 of the Code which forbids the allowance of any account for compensation for services of any deputy until he has certified under oath that he has actually received for his own use and benefit the full sum charged.

We cannot therefore doubt that payment of the salaries of deputies is a duty imposed by law upon the clerk and comes within the condition of the bond.

We are not influenced by the cases cited by the appellee to

sustain his position.   In *Brown* v. *Phipps*, 6 Smedes & Marshall; 54, and in *Commonwealth* v. *Swope*, 45 Pa. St. 536, it was held, in the first case, that a tax collector's official bond, and in the other a sheriff's bond, was not liable to the publishers of a newspaper, for printing advertisements of sales, though the law required such advertisements.   There is a very obvious distinction between those cases and the present case. The printer is not a deputy doing the work of the tax collector and sheriff, but is doing work which only a printer and publisher can do, and doing it for the collector and sheriff.  He does not need the protection of the bond, because he can, if he thinks it necessary for his protection, demand his proper charge for such service when ordered.   The work of a deputy working on a salary is not capable of such apportionment and demand and there is no parallel between the cases.

The case of *Crocker* v. *Fales*, 13 Mass. 260, it must be conceded, tends to support the appellee's contention, but it is not satisfactory to us.   In that case the clerk's bond was held not liable for the fees of the crier of the Court though by the fee bill it was made the duty of the clerk to receive the fees of the crier for his use, and the condition of the bond was that the clerk should "well and truly discharge all the duties of the office."   CHIEF JUSTICE PARKER said that the contention that the duty to pay was concurrent with the duty to receive "would be a just conclusion if we were satisfied that the Legislature, in requiring a bond in this form, intended to secure to individuals an idemnity for such omissions by the clerk as would be injurious to them," but upon consideration of the condition of the bond and of the statute upon which it was founded, the Court concluded such was not the intention of the Legislature.   Our examination of the present case, as we have said, leads us to the conclusion that our law makers intended this bond to protect the deputies in the payment of their salaries.

We are sustained in this conclusion by the view expressed in *Weisenborn* v. *The People*, 53 Ill. App. 32, in which the clerk's bond was held liable to the sheriff for his fees col-

lected by the clerk, and also by the case of the *News Publishing Company* v. *Gould*, 1 Pennewell (Del.) 366, in which it was held that the statute made the sheriff, in advertising sales, the instrument of the Court and that as such his recognizance as sheriff was security for the advertising. We are not to be understood as adopting or approving that decision as applied to sheriff's advertisements in this State as we have already intimated in this opinion. We refer to that case and the general view expressed therein, in support of the conclusion we have reached in this case upon its own facts and circumstances.

We perceive no ground for any distinction between the arrears of salary and the charge for recording. The work in each case was work done in the performance of the duties of the office and this we think is the test of liability on the bond.

We do not think it was necessary to allege in the declaration the sufficiency of the fees received for the maintenance of the office. The scheme of the system established by law for this purpose raises a *prima facie* presumption of its sufficiency, and insufficiency should be pleaded and proved by the defendant. A sound analogy is found in the rule of criminal pleading which only requires an exception to be negatived when so incorporated in the enacting clause that the one cannot be read without the other.

There was error therefore in sustaining the demurrer to the original as well as to the amended declaration.

For these reasons the judgment will be reversed.

> *Judgment reversed and new trial awarded.*

(Decided June 23rd, 1905.)

McSHERRY, C. J., dissented.