**MARYLAND CASUALTY CO. v. STATE et al.**

No. 13077.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 22, 1935.

Rehearing Denied March 29, 1935.

Cantey, Hanger & McMahon and Warren Scarborough, all of Fort Worth, for appellant.

Thompson & Barwise, McDonald & Floyd, A. J. Baskin, Arthur Lee Moore, and Morris Williams, all of Fort Worth, for appellees.

BROWN, Justice.

Orville Beall was duly elected, in the year 1930, county clerk of Tarrant county, Tex., and qualified as such clerk on January 1, 1931, and entered into the statutory bond with the Maryland Casualty Company, the bond being as follows:

"The State of Texas, County of Tarrant.

"Know All Men by These Presents: That we, Orville Beall as principal, and Maryland Casualty Company, a corporation, incorporated under the laws of the State of Maryland and authorized to transact a surety business in the State of Texas, as Sureties, are held and bound unto R. S. Sterling, Governor of Texas, and his successors in office, in the sum of Ten Thousand Dollars, for the payment of which we hereby bind ourselves and our heirs, executors and administrators, jointly and severally, by these presents.

"Signed with our hands and dated this 1st day of January, 1931.

"The condition of the above obligation is such, that, whereas, the above bounden W. Orville Beall was, on the 4th day of November, 1930, duly elected to the office of County Clerk in and for Tarrant County, in the State of Texas; Now, therefore, if the said W. Orville Beall shall faithfully perform and discharge all the duties required of him by law as County Clerk aforesaid, and shall safely keep the records of his office and shall pay over to his county all moneys illegally paid to him out of County funds, as voluntary payments or otherwise, then this obligation to be void, otherwise to remain in full force and effect.

"In testimony whereof, witness our hands.
"Orville Beall.
"Maryland Casualty Company.
"By E. D. Rutledge
"[Seal] Attorney-in-fact.
"The State of Texas, County of Tarrant:

"Before me, M. J. Miller, a notary public on this day personally appeared Orville Beall, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office at Fort Worth, Texas, this 30 day of December, 1930.
"M. J. Miller
"Notary Public, Tarrant County, Texas."

Let us consider the provisions of article 3902, Rev. Civ. Statutes of Texas, which provides, in substance, that, whenever a county clerk shall require the services of deputies or assistants in the performance of his duties, he may apply to the county commissioners' court of his county for authority to appoint such deputies or assistants, setting out by sworn application the number needed, the position sought to be filled, and the amount to be paid, and such application shall be accompanied by a statement showing the probable receipts and disbursements of the office and that the county commissioners' court may make its order authorizing the appointment of such deputies and fixing the compensation to be paid them and determine the number to be appointed. The article further provides that, upon entry of such order, the officer applying for such deputies shall be authorized to appoint them as provided by law, but that the compensation allowed the deputies shall not exceed the maximum amounts set by the statutes.

The statute in force, during the tenure of office of Orville Beall, fixed the maximum annual salary for the chief deputy at $3,000; the maximum annual salary for heads of departments at $2,700, when such heads of departments shall have previously served the county for not less than two continuous years, but limited the annual salary for such heads of departments to $2,400 when the head of such department had served the county less than two continuous years. The statute further provides that of all other deputies and assistants 50 per cent. of the number so appointed may be paid at a rate not to exceed $2,500 per year, providing further that such rate should be allowed only to deputies in service for two years or more, and that all other deputies and assistants so appointed be paid at a rate not to exceed $2,100 per year.

Beall made the following application in writing for authority to appoint deputies:

"To the Honorable County Judge, and Commissioners Court of Tarrant County, Texas.

"Gentlemen: I, Orville Beall, County Clerk, hereby make application to your Hon-

orable body for authority to appoint the necessary deputies or assistants for the fulfillment of the duties in said County Clerk's office, as provided for in Article 3902 of the Rev. Civ. Statutes of 1925 and as amended by the 41st Legislature of Texas in 1929 and

"I further request that each of said deputies so named and appointed be allowed the maximum salary for the department to which he or she might be assigned, in accordance with the provisions of the law pertaining to the appointment of deputies or assistants, towit:

| Ed L. Sorrels | First Assistant |
| Hal P. Hughes | Department Head |
| R. W. Watson | " " |
| A. R. Votaw | " " |
| B. M. Harding | " " |
| F. E. Ligon | " " |
| Grace Moore | " " |
| H. G. Cottar | " " |
| Jack Lowe | " " |

Assistants

| Thos. A. Lee | Mrs. Maude Klebond |
| J. F. Yates | Mrs. Scott Woodward |
| Robert L. Ball | Mrs. Lon Evans |
| C. H. Harris | Evelyn Jackson |
| Mrs. Charlotte W. Johnson | Mary Dean Bell |
| Dorothy M. Briggance | Mrs. Grace Mays |
| Edna Dinkins | Alliene Hambrick |
| Francis Bell | George C. Mosier |
| Mrs. Lela Poe | John Roberts, Jr. |
| Mrs. Lottie A. Lally | J. L. Patterson |
| Mrs. Faye Eagle | |

"I further state that the probable disbursements of the office for the coming year will be approximately $70,000.00 and the probable receipts will be approximately $80,000.00.

"Most respectfully submitted,
"Orville Beall,
"County Clerk, Tarrant County, Texas.
"Subscribed and sworn to before me this the 1st day of January A. D. 1931.
"L. O. Hulsey,
"Notary Public in and for Tarrant County, Texas."

Such application having been presented to the commissioners' court of Tarrant county, Tex., action was had thereon and the following order entered in the minutes of the commissioners' court:

"Moved, seconded and carried that the application of the County Clerk, Orville Beall, for ratification of appointment of deputies, be and the same is hereby granted and said appointments ratified and approved at the salaries specified in said application, provided the fees in said office are sufficient to pay maximum salaries provided by law, or the salaries specified in said application according to law.

"No. 3089.

"Entered in the Minutes of the Commissioners Court in Vol. 29, pages 403–4."

Subsequent to the application above referred to and the order entered thereon, Beall filed with the commissioners' court an application to approve the appointment of Mrs. Leona Finch as a deputy to take the place of H. G. Cottar, resigned, effective February 1, 1931, and in such application advised the commissioners' court that he had temporarily laid off J. F. Yates, Mrs. Grace Mays, and Mrs. Maude Klebold, and advised the court that he had thus reduced the force from 29 deputies to 26.

The application reads as follows:

"Fort Worth, Texas.
"March 18, 1931.
"Honorable County Judge and Commissioners Court, Tarrant County.

"Gentlemen: I hereby petition the Court to approve the appointment of Mrs. Leona Finch as a Deputy County Clerk, to take the place of H. G. Cotter, resigned, effective February 1st, 1931.

"This is also to advise that the following deputies have been laid off temporarily:

"J. F. Yates, Mrs. Grace Mays and Mrs. Maud B. Klebold.

"This reduces our force from 29 deputies to 26 deputies, which I believe to be the fewest number of employees used in this office in the past 12 years.

"Yours truly,
"Orville Beall
"OB–ELS.          County Clerk."

"Approved 3/19/31
"C. W. Atkinson
"County Judge.

"Order of Commissioners Court.

"3409. Mrs. Leona Finch, Deputy Co. Clerk, appointment ratified, and others dropped from payroll, March 19, 1931.

"Came on for consideration the following application of Orville Beall, County Clerk, which is hereby approved."

Mary Dean Bell, Robert Ball, Evelyn Jackson, Mrs. Leona Finch, Mrs. Lottie A. Lally, and Mrs. Lon Evans brought suit against Orville Beall, county clerk, and appellant, Maryland Casualty Company, to recover upon a ratable basis the difference between the salaries paid to them by Orville Beall and those to which they alleged they were entitled by reason of the application made to the county commissioners' court for their appointment, and the order of the court approving same and thereby fixing their salaries; plaintiffs al-

leging the salaries actually paid to them by the clerk, and further alleging that the clerk collected sufficient fees of office after paying himself the annual salary of $2,750 and deducting the premium paid on his official bond, which amounted to $50, to have paid them ratably far more than they were actually paid, but that the said clerk did not make such payment, but "wrongfully and illegally and contrary to the law and to the provisions of his bond, diverted said fund to his own account, or has failed to account for such funds, to these plaintiffs' damage."

The following named deputies filed independent suits against Beall and his surety, the appellant, Maryland Casualty Company: Jack Lowe, Mrs. Lela Poe, F. E. Ligon, and A. R. Votaw, alleging, in substance, the same cause of action as that set up by the six deputies first named above.

We do not consider it necessary to include any other party or suit in this opinion, the trial court having consolidated all of the causes of action and having rendered one judgment thereon, and thé only appeal before us being that of appellant, Maryland Casualty Company, the surety on Orville Beall's official bond. Said appellant appealed from the judgment rendered in favor of Mary Dean Bell against Orville Beall, as principal, and Maryland Casualty Company, as surety in the sum of $824.98, and similar judgments, in favor of Robert L. Ball in the sum of $824.98; Evelyn Jackson in the sum of $809.73; Mrs. Leona Finch in the sum of $779.73; Mrs. Lottie A. Lally in the sum of $824.98; Mrs. Lon Evans in the sum of $824.98; Jack Lowe in the sum of $888.98; F. E. Ligon in the sum of $103.38; and Mrs. Lela Poe in the sum of $696.70.

It appears that for the year 1931 the total fees collected amounted to $53,031.56; that for the year 1932 current fees collected amounted to $43,005.08, and delinquent fees earned prior to 1931 and collected in 1932 amounted to $568.16, making the total fees held by the trial court to be applicable to the clerk's salary and the deputies' salaries $43,573.24 for such year. It further appears that during the year 1931 Beall drew from the funds of his office $10,216.59, and in 1932 $10,991.56. Under the existing laws, had the fees of his office been sufficient to pay all of his deputies the salaries provided for and an excess sufficient for such purpose had remained, he could have paid himself $12,500 per year. It appears from the record that it became apparent to Beall that the fees earned in his office would not permit him to pay all of his deputies the maximum salaries provided by

law, and at the same time permit him to receive the maximum of $12,500 per year, or any sum approximating such amount, and, instead of going back to the commissioners' court of Tarrant county with a new statement, under oath, showing some lawful method for fixing the salaries of his deputies at such sums as would reasonably come within the receipts of his office and leave a substantial margin for himself, he and his chief deputy laid off three deputies, and, calling one by one his deputies before him, whom he intended to pay much smaller sums than their maximum salaries amounted to, and even smaller sums that his chief deputy testified Beall had decided to pay such deputies, simply advised them that their salaries had been cut by him, and thereafter he issued checks to them which they received and collected. It appears that he paid Mrs. Leona Finch for the year 1931 $1,125; that he paid a smaller sum to Evelyn Jackson; that he paid to Robert Ball, Mrs. Lottie A. Lally, Mrs. Lon Evans, and Mrs. Lela Poe and Mary Dean Bell $1,250 each; that he paid Jack Lowe $1,850 and F. E. Ligon $1,600; that in the year 1932 he paid Mrs. Leona Finch $1,189.65; that he paid Robert Ball, Mrs. Lottie A. Lally, Mrs. Lon Evans, Evelyn Jackson and Mary Dean Bell $1,159.65 each; that he paid F. E. Ligon and Jack Lowe $1,350 each; and that he paid Mrs. Lela Poe $900.

The judgment of the trial court, in effect, is that Beall, the county clerk, applied, as the law required him to do, to the commissioners' court of Tarrant county for the appointment of the deputies named, that he fixed their salaries at the maximum sums allowed under the law, provided that the fees of office collected would permit the payment of such maximum sums, and that, with the record standing in such fashion, Beall, having collected a large sum each year in excess of $2,750 allowed him by law and the annual premium of $50 per year, should have deducted $2,800 from the fees of office collected by him, and, having agreed to pay his deputies the maximum salaries allowed by law, the deputies were entitled to be paid ratably out of such funds received, and judgment was entered by the trial court accordingly.

Appellant, Maryland Casualty Company, bases its appeal upon two assignments of error: (1) That the trial court erred in rendering judgment in favor of the deputies and against the surety company on Beall's official bond as county clerk (a) because, regardless of the question of Beall's liability for failure to pay the deputies their salaries, the surety

company would not be liable whether the obligation for such salaries be evidenced by express agreement, implied agreement, or by valid order of the commissioners' court, in that the same is not such an obligation that the breach of it would violate the condition of the bond; because (b) Beall's application only sought and obtained permission of the commissioners' court to pay salaries of his deputies up to the maximum amount allowed by law and imposed no obligation upon Beall to pay such maximum salaries, but that the amount of salaries to be paid such deputies was left to the contract or agreement Beall might make with his deputies, subject only to the limitation that the amount could not exceed the maximum amount allowed by law; (c) because Beall's application and the orders of the commissioners' court are not sufficiently definite and specific to impose an absolute duty to pay the maximum salaries to his deputies, inasmuch as under the statute a certain maximum is applicable to 50 per cent. of the deputies and another maximum is applicable to the remaining 50 per cent., and the order does not purport to specify which maximum is applicable to the respective deputies; (d) because, between Beall and his deputies, the applications and orders would not supersede or invalidate the definite agreement on their part to work for a definite sum per month, provided such sum did not exceed the maximum provided by law; (e) because the deputies, having been paid and having accepted a definite amount per month after the termination of their employment, are estopped to assert that they had not agreed to work for less than the maximum allowed by law, and to contend that the applications and orders imposed an obligation upon Beall to pay them their maximum salaries; (f) because the fees of the county clerk's office were not sufficient in either the year 1931 or the year 1932 to pay the maximum salaries which might be allowed such deputies, and therefore, under the terms of the order of the commissioners' court, they were not entitled to receive the maximum salaries, and the definite agreements between the deputies on the one hand and the county clerk on the other fixing their compensation were valid and binding, the amounts agreed to be paid having been actually paid; and (g) because the deputies are not entitled in any event to recover any additional compensation for that part of the term of their employment beginning with March, 1931, at which time they agreed to accept a monthly sum less than that which had theretofore been paid them, such lesser sum agreed upon having been paid and accepted.

The other assignment of error is that the trial court erred in overruling the Maryland Casualty Company's special exception to the pleadings of the deputies; such exception being that the suit could only be maintained in the name of the Governor of the state of Texas.

We are of the opinion that the application made by Beall to the commissioners' court had the effect of fixing the compensation at the maximum allowed by law, provided the fees of office were sufficient to pay the same. We are further of the opinion that, when Beall learned that the fees of office being received were not sufficient to pay the deputies whom he had appointed, by making application to the commissioners' court for the right to do so, their maximum salaries, which maximum salaries he expressly in his application asked authority to pay, it then became his duty to do one or two things: (1) To apply to the commissioners' court for an order authorizing him to pay all of the deputies smaller salaries in order to meet his actual income; or (2) make application reducing his force to such a number that the payment to them of the maximum salaries which he had requested that he be permitted to pay them might be accomplished within his income. Beall did neither of these things. The record discloses that, when his deputy H. G. Cottar resigned, Beall applied to the commissioners' court for the authority to appoint Mrs. Leona Finch as a deputy in place of Cottar, and in which he advised the commissioners' court that he had discontinued the services of three of his deputies, whose rights do not appear in this suit; and the record discloses that subsequent to that time he merely arbitrarily fixed the amount that he desired to pay to his deputies and told them such would be their compensation. Having appointed them upon application and with the express permission of the commissioners' court of Tarrant county, Tex., and having set their salaries and the right to pay such in his application at the maximum sum allowed such deputies under the law, and having taken no further steps thereafter, we hold that he was obligated to pay such deputies their maximum salaries after deducting his salary of $2,750 and the $50 premium on his official bond, and that, if the excess thus remaining was not sufficient to pay such maximum salaries, he was then obligated to pay so much thereof as the funds on hand would permit. We therefore further hold that the applications and orders are sufficiently definite and specific to

impose an absolute duty upon the part of the clerk to pay the maximum salaries to his deputies, such maximum salaries being ascertainable from the plain provisions of the laws of Texas governing the salaries of such deputies in counties having the population that Tarrant county had at that time.

We are further of the opinion that there is no merit in the contention that these deputies agreed to take the definite sums paid to them by the clerk and that this is a binding contract upon such deputies, and we do not believe that the acceptance of such payments did or could work an equitable estoppel upon the part of the deputies.

It is interesting to note that, prior to the passage of the statutes which govern this case, the Twenty-fifth Legislature, in 1897, 1st Sp. Sess., provided as follows in chapter 5, § 12, thereof:

"Whenever any officer named in section 10 of this act shall require the service of deputies or assistants in the performance of his duties, he shall apply to the county judge of his county for authority to appoint same, and the county judge shall issue an order authorizing the appointment of such a number of deputies or assistants as in his opinion may be necessary for the efficient performance of the duties of said officer. The officer applying for appointment of a deputy or assistant, or deputies or assistants, shall make affidavit that they are necessary for the efficiency of the public service; and the county judge may require, in addition, a statement showing the need of such deputies or assistants, and in no case shall the county judge attempt to influence the appointment of any person as deputy or assistant in any office. The maximum amount allowed for deputies or assistants for their services shall be as follows, to-wit:

"First assistant or chief deputy, a sum not to exceed a rate of $1,200 per annum, others not to exceed a rate of $900 per annum.

"The county judge in issuing his order granting authority to appoint deputies or assistants, shall state in such order the number of deputies or assistants authorized and the amount to be paid each, and the amount of compensation allowed shall be paid out of the fees of office to which said deputies or assistants may be appointed, and shall not be included in estimating the maximum salaries of officers named in section 10 of this act."

The act, like the one before us at this time, further provided that such officer could retain, after the payment to himself of his fixed salary and the salaries of his deputies, a certain per cent. of the excess fees, and the balance should be paid into the county treasury. The present statute, being article 3902, reads as follows:

"Whenever any officer named in Article 3883 shall require the services of deputies or assistants in the performance of his duties, he may apply to the county commissioners' court of his county for authority to appoint such deputies or assistants, setting out by sworn application the number needed, the positions sought to be filled, and the amount to be paid. Said application shall be accompanied by a statement showing the probable receipts and disbursements of the office; and said court may make its order authorizing the appointment of such deputies and fix the compensation to be paid them and determine the number to be appointed, provided that in no case shall said commissioners' court or any member thereof attempt to influence the appointment of any person as deputy or assistant in any office. Upon the entry of such order, the officers applying for such deputies shall be authorized to appoint them as now provided by law, provided that said compensation shall not exceed the maximum amounts hereinafter set out."

Under the disposition of fees, Rev. St. 1925, art. 3891, as amended by Acts 1930, 4th Called Sess., c. 20, § 3, provides: "Each officer named in this Chapter shall first, out of the fees of his office, pay or be paid the amount allowed him under the provisions of this Chapter, together with the salaries of his assistants and deputies, and the amount necessary to cover costs of premium on whatever surety bond may be required by law. If the fees of such office collected in any year be more than the amount needed to pay the amount allowed such officer and his assistants and deputies, same shall be deemed excess fees."

The case of Ellis County v. Thompson, reported in 95 Tex. 22, 64 S. W. 927, and on motion for rehearing in 95 Tex. 28, 30, 66 S. W. 48, 49, was one in which Ellis county filed suit against Thompson, county clerk of such county, to recover fees retained by Thompson in excess of the amount allowed him by law. Judge Brown, speaking for the Supreme Court, said:

"Before the enactment of that law [referring to the Act of the 25th Legislature, passed in 1897], county clerks determined for themselves the question of employing deputies, and made contracts for their compensation, being personally liable therefor. But the state now determines the necessity for deputies,

their number and compensation, and their salaries are payable out of the fees. The clerk is not personally liable further than to receive the fees and pay over the money to the deputies. Out of abundant caution, however, the provision that the compensation of deputies should not be included in estimating the maximum salaries—that is, not included in the $2,500 [$2,500 being the salary fixed for the clerk]—was inserted to make sure that the salaries of the deputies should not be a charge upon the clerk. If, however, we are mistaken, then the language must mean that; before the 'one-fourth of the excess' is estimated [the one-fourth of excess being the extra compensation to be paid to the clerk if the income from the office permit], the maximum salary of the officer and the amount paid to deputies shall be deducted, leaving the excess contemplated by the statute. The amount paid to deputies having been deducted would not be included in estimating the 'maximum salary,' whether it be the fixed sum or includes the one-fourth of the excess. * * * The purposes for which the law was enacted is a matter of prime importance in arriving at a correct interpretation of its terms. If it were true, as claimed, that the object of the legislature in enacting the law was to enlarge the rights of the officers named, it should be construed so as to accomplish the legislative intent; and our conclusion would not be correct, because it is not reached from that view point. Before the enactment of that statute the officers received and appropriated to their own use all fees derived from the performance of their official duties, and their interests would have been best served by leaving the law as it was, as was done with counties having a population of 15,000 or less. Where the fees do not amount to the maximum fixed for the officer, he gets no more than the fees yield; if they exceed the maximum allowed, the officer must account for the excess, limiting the existing rights of officials in the fees, instead of enlarging them. The legislature undertook to regulate this matter so as to give to each officer, out of the fees collected by him, a reasonable compensation for the services rendered, to make the offices self-sustaining, and to apply the excess of fees to public use. To accomplish this end, the business of the offices named is placed strictly on the basis of a public service, and the fees are treated as a part of the public revenue to be received by the officer and accounted for as directed. So marked is this feature of the law that the officer cannot remit a fee. The provision for appointing deputies was made to provide for the contingency that the duties might be greater than the officer could perform, and is based upon the inability of the officer to do the work, and that the fees would be sufficient to pay the deputies, and the number to be appointed would be regulated by the work to be done and the probable yield of the fees. Placing the authority to determine the number and pay of deputies with the county judge guards the fund against extravagance, while the deputies are protected against exactions of the principal officer by prohibiting him, under severe penalties, to retain any part of the amount allowed them, or to pay to them less than the salary fixed by the county judge. * * * What would be their respective rights in case the fees would not compensate principal and deputies is not before the court. When the services of principal and deputies have been paid for, if there be an excess, the law generously gives one-fourth to the officer. The fees being collected from the public, the amount in excess of fair compensation for services rendered ought to be returned to the public, which is done by turning it into the county treasury as a part of the county fund."

In dealing with the problem that was then before the Supreme Court, the opinion continues:

"The fixed salary of the clerk is $2,500. By determining the number of deputies to be appointed, and fixing their compensation, the cost of their services per annum could be ascertained, which we will place at the actual cost, $4,151.59, and from the statement an estimate of the fees could be made, which, for present purposes, we will fix at the sum actually collected, $7,180.80. Deduct $2,500, fixed salary, and there remains $4,680.80. Add one-fourth of that amount, $1,170.20, to the salary of the clerk, and he would receive $3,670.20, leaving $3,510.40 to be applied to the payment of the deputies for their services, worth $4,151.59. The clerk would get $1,170.20 more than the value of his services, and the deputies would receive $641 less than the amount allowed. The result would be that the number of deputies must be reduced so as to bring their compensation within the amount of fees collected, whereby the public service would suffer, or they must be denied fair pay for their labor. This interpretation sacrifices everything to the private interests of the officer. Construed according to the obvious intention of the legislature, the deputies would receive the fair value of their labor, the clerk would receive the full value

of his services, and 'in addition thereto one-fourth of the excess,' leaving a small sum for the county treasury, and 'the efficiency of the public service' would be maintained."

It will be observed that the only difference between the law in force when Beall was county clerk and that when Thompson was county clerk in Ellis county is that the application must be made to the commissioners' court for authority to appoint deputies and the fixing of their salaries.

In our opinion, the law in force when Beall was county clerk of Tarrant county was passed by the Legislature for the purpose of maintaining efficiency in the county clerk's office, for the public good, and, in part, to prevent the county clerk from doing exactly what was done in the case before us, namely, arbitrarily paying the deputies what he desired to pay them without the express approval and sanction of the commissioners' court, and put in his private pockets more than $7,000 per year, over and above the salary fixed for him by law. We do not believe that Beall was authorized to do any such thing, in the light of the record presented to us. We hold that it was Beall's duty, under the law, when he found that the income of his office would not permit the schedule which he asked to be approved by the commissioners' court, to go before the commissioners' court and present the facts in writing and obtain from such court, if in their discretion they thought the efficiency of the office could be thus maintained, an order devising some lawful means whereby he could pay his deputies adequate salaries out of the receipts of his office. Had Beall done this, and had the commissioners' court, in its discretion, approved such an order, and if Beall had paid his deputies the schedule thus approved, and there had remained then in his hands a sum of money greater than $2,800 per year, Beall would have been entitled to have retained such sum for himself, provided such annual sum taken by him did not amount to more than $12,500 including his fixed salary.

An interesting case of the Court of Appeals of Maryland, State v. Turner, reported in 101 Md. 584, 61 A. 334, 337, is directly in point. The court said:

"He cannot himself fix and limit the salaries to be paid to his deputies, but must allow such as the Comptroller of the State shall determine to be just and proper. The manifest purpose of this provision is to prevent the wrongful absorption of the receipts of the office by excessive salaries on the one hand, and to secure the services of competent persons by the assurance on the other hand of just and reasonable compensation. In no clerk's office in the state would it be possible for the clerk unaided to perform all the clerical work when and as it should be done for the protection of the public, and it was this consideration which caused the framers of the Constitution to embody in that instrument the duty of appointing deputies, and the power of confirmation and supervision conferred upon the court. Deputies are not mere servants or agents of the clerk; they are agents and officers of the court, being appointed, in the language of the Constitution, 'to perform, together with (the clerks) themselves the duties of the said office.' It would seem that the duty to employ deputies at certain salaries fixed by the chief accounting officer of the state would necessarily carry with it the corresponding duty to pay the salaries so fixed, and that the payment of salary under such circumstances is as essentially an official act as the act of appointment."

The opinion of the court further states that the law "dedicates the receipts of the office primarily to the payment of all necessary expenses, chief among which are the salaries of deputies, and forbids the clerk to appropriate any of these receipts to his own salary until after such expenses are paid. Until payment of such expenses, the receipts of the office are public moneys in his hands to be applied to such payment, and his bond in reason and justice is as much answerable to the deputies who are entitled to so much of those receipts as it is to the state for any excess of receipts over and above such expenses and his own salary."

The Maryland laws are similar to the Texas laws. In Maryland the judge of the court determines the number of the deputies, and the state comptroller fixes the compensation. In Texas, the commissioners' court both determines the number of deputies and fixes their compensation.

The record discloses that none of the deputies excepting Jack Lowe sued for any compensation above the lesser compensation fixed by the statutes; and the evidence was uncontradicted that Lowe had worked for a number of years as a deputy in various offices in Tarrant county, and therefore he was entitled to have his salary figured at $2,500 per year rather than $2,100 per year; and appellant's contention with reference to the amounts allowed by the trial court as the maximum sal-

aries of the complaining deputies is without merit.

On the question of the deputies being estopped to ask for their maximum salaries because they accepted the amounts that they were actually paid, and further that they agreed to take such smaller salaries and are bound by their contract, we cite the case of Greer v. Hunt County, opinion by the Commission of Appeals, sect. B., 249 S. W. 831, 833. Greer was elected county treasurer of Hunt county in 1914 and re-elected in 1916. The commissions which he would have been entitled to receive under the statutes amounted to more than $2,000 maximum, each year he held office. In 1909 the commissioners' court of Hunt county passed an order fixing the salary of the county treasurer at $1,200 per annum, and during each month Greer was in office he received and accepted from the county a warrant for $100 as his monthly salary. He knew at the time that he was elected of the order referred to above and that the county treasurer of Hunt county had been receiving the salary of only $1,200 per year. He took such salary without formal protest, and the trial court found that at the time he was receiving the same he had no intention of claiming the commissions allowed by law. Greer having sued for the maximum sums due him, the Commission of Appeals held that the order of the commissioners' court was invalid, and said:

"Under these circumstances the acceptance of less than he was entitled to ought not as a matter of law to preclude him from afterwards demanding the balance to which he was legally entitled, for the relinquishment of which the county paid, and he received no consideration whatever. The county owed him absolutely a fixed and definite amount, to which there was no defense, and concerning which there was no legal controversy. We think the principle of law applies here that a debt fixed in amount and absolutely payable cannot be discharged by payment by the debtor and acceptance by the creditor of a less amount."

We see nothing in the contention of appellant with reference to the manner in which the several suits were brought, and hold that it was neither necessary for the Governor of the state of Texas nor the state itself to bring suit for the use and benefit of the plaintiffs. Scott et al. v. Hunt, 92 Tex. 389, 49 S. W. 210; Bond v. Poindexter (Tex. Civ. App.) 116 S. W. 395; Nichols et al. v. Galveston County, 111 Tex. 50, 228 S. W. 547;

Hoke v. Simonton (Tex. Civ. App.) 46 S.W. (2d) 1013; Tabor v. McKenzie (Tex. Civ. App.) 49 S.W.(2d) 874; Eastland County v. Hazel (Tex. Civ. App.) 288 S. W. 518.

All assignments of error are overruled, and the judgment of the trial court is affirmed.